J-S13031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| ELON JAMES | : |
| | : |
| Appellant | : No. 1685 EDA 2025 |

Appeal from the Judgment of Sentence Entered March 14, 2025
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0000310-2024

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                         **FILED JUNE 30, 2026**

Appellant, Elon James, appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas, following his jury trial convictions for resisting arrest or other law enforcement[1] and related offenses. We affirm.

The relevant facts and procedural history of this appeal are as follows.

> On November 30, 2023, sometime between 7:30-7:45 p.m., Donald Souders and his wife Ruby Khallouf arrived at Pat's Pizza, 1426 W. Broad Street, Bethlehem, Pennsylvania, to pick up an order.  Donald was driving his wife's BMW X3 SUV, and Ruby was in the front passenger seat.  The couple waited in the car for a few minutes.  During this time Donald observed a black male wearing a black hoodie, a ski mask, and white headphones walk near his vehicle.  [Appellant] eventually walked out of view.  After a few minutes, Donald exited the vehicle to go inside, and Ruby remained in the car with the engine still running.

_____

[1] 18 Pa.C.S.A. § 5104.

Almost immediately after exiting the car, Donald was approached by the black male he observed earlier. The two had a very brief conversation and then the male said to Donald, "I'm taking your castle. [I'm] taking your fucking castle," and began punching Donald in the face. Donald attempted to turn and get distance between him and the male, but the male grabbed Donald's jacket and threw him to the ground away from the car. Donald's right shoulder and face hit the pavement. The male continued hitting Donald while he was on the ground.

At this time, Ruby exited the vehicle and ran to her husband. Ruby got between Donald and the male, and screamed to the male to get away. Eventually, the male walked towards the BMW and started opening the driver's door. Ruby approached the male, closed the door, and stated to the male, "What are you going to do, hit a girl?" At that point, the male walked away. Donald picked up a wallet that was on the ground near him, and it contained a New Jersey ID card for [Appellant]. The couple then went inside the pizza shop and called the police.

Bethlehem Police officers were dispatched to Pat's Pizza. Officer Andrew Wirth arrived and spoke with Donald. Wirth observed a bruise to the right side of Donald's forehead, and multiple abrasions and lacerations on his forehead, nose and cheek. Donald advised Wirth that he thought his right shoulder was dislocated.

Meanwhile, Officer Douglas Pascoe was in full uniform and operating a marked patrol unit in the area of the 1500 block of W. Raspberry St., which was less than five minutes from the pizza shop. Pascoe was canvassing the area when he observed an individual matching the description of [Appellant]. Pascoe stopped and exited his vehicle and asked [Appellant] to come over to him. [Appellant] walked towards the passenger side of Pascoe's vehicle. Pascoe attempted to secure [Appellant], but [Appellant] pulled away and began to run. In the process, Pascoe grabbed [Appellant]'s sweatshirt and the sleeve ripped, causing Pascoe [to] fall to the ground. [Appellant] continued running. While fleeing, [Appellant] removed the hoodie and ski mask he was wearing. Pascoe eventually caught up with [Appellant] and got him to the ground. Pascoe was ordering

[Appellant] to roll on [his] stomach and tried to gain control of him, but was unable to as [Appellant] was uncooperative. Officer Wirth and Lieutenant Kromer arrived and attempted to help secure [Appellant]. However, [Appellant] continued to struggle with the officers, so Wirth deployed a warning arc and two dry stuns in an attempt to gain control of [Appellant].[2] Eventually, the three officers were able to take [Appellant] into custody.

(Trial Court Opinion, filed 9/8/25, at 2-3).

Following trial, a jury convicted Appellant of resisting arrest and related offenses. On February 26, 2025, the court sentenced Appellant to an aggregate term of ten years and nine months to twenty-two years' imprisonment. On March 6, 2025, the court issued a corrected sentencing order, which included a consecutive term of one year of probation. Appellant timely filed a post-sentence motion on March 7, 2025, which the court denied on June 24, 2025.[3]

Appellant timely filed a notice of appeal on July 1, 2025. On July 2, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on July 17, 2025.

_____

[2] Officer Wirth described a warning arc as "a loud audible noise to indicate that, if somebody doesn't comply to our commands that we're giving they could have that application of the taser." (N.T. Trial, 1/16/25, at 44). Officer Wirth also explained that a dry stun is "the contact of the taser itself, to the defendant's left leg[.]" (**Id.** at 45).

[3] On March 14, 2025, the court issued a second, corrected sentencing order to clarify its intention to impose consecutive sentences for certain counts. (**See** Corrected Order, filed 3/14/25).

- 3 -

Appellant now raises one issue for this Court's review:

The evidence presented at trial was insufficient to convict Appellant of the offense of resisting arrest in that the credible evidence presented did not establish beyond a reasonable doubt that [Appellant] knew or should have known that he was fleeing from a police officer, and that [Appellant] physically resisted his apprehension because he was pinned to the ground by the officers, thereby unable to comply with their orders.

(Appellant's Brief at 5).

On appeal, Appellant contends that he was unaware of the fact that he fled from the police on the night in question. Specifically, Appellant emphasizes trial testimony establishing that Officer Pascoe was dressed in a dark uniform, he did not activate the overhead lights on his police cruiser, and he did not verbally identify himself as a police officer. Under these circumstances, Appellant reasons that the only way he could have known that he was dealing with the police was by seeing the uniform. Appellant insists, however, that the uniform was "not readily visible in the dark." (*Id.* at 27). Appellant further argues that the Commonwealth's evidence did not demonstrate his physical resistance. Rather, Appellant maintains that he was unable to comply with the officers' commands while being pinned to the ground by the officers. Appellant acknowledges that he heard the officers' verbal commands, but the commands to "roll over" and "get on your back" were impossible "given the facts that several officers were on top of him[.]" (*Id.* at 29). Appellant concludes that the Commonwealth presented insufficient evidence to support his resisting arrest conviction, which this Court

must reverse.  We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty.  Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence.  Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence.  Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines the offense of resisting arrest as follows:

**§ 5104.  Resisting arrest or other law enforcement**

A person commits a misdemeanor of the second degree if,

- 5 -

with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104.

Instantly, the trial court determined that sufficient evidence supported the resisting arrest conviction:

> Officer Pascoe credibly testified that when he first attempted to secure [Appellant], [Appellant] pulled away with such force that [Appellant's] sleeve ripped and Pascoe fell to the ground. When Pascoe attempted to secure him again, [Appellant] struggled with the officer and ignored Pascoe's commands. When two additional officers arrived, [Appellant] continued to struggle with them to the point where a dry stun was needed to gain control of [Appellant]. This certainly is sufficient to sustain the conviction for resisting arrest.

(Trial Court Opinion at 6). Our review of the record confirms this analysis.

Regarding Appellant's awareness of the presence of police officers, we emphasize Officer Pascoe's testimony that he was in full uniform and in a marked patrol car on the night in question. (*See* N.T. Trial at 6). Officer Pascoe also stated that Appellant walked behind and alongside the marked patrol car prior to the officer's attempt to detain Appellant. (*Id.* at 11). Moreover, Officer Pascoe described the substantial force required to place Appellant in handcuffs:

> [Appellant] was continuously tense, having tensed up his arms, and muscles, which required me to use all my strength to even try to secure one of his arms. He … was rolled onto his right side, where … the other two officers attempted to secure his right arm.

> But they weren't able to do so, between the combination of him pulling away, and also just refusing to put his arms to the small of his back, which ended up requiring Officer Wirth to utilize the taser.

(*Id.* at 16).

Likewise, Officer Wirth addressed the fact that Appellant did not cooperate, even after the officer utilized the "warning arc" function from his taser. After the warning arc, the officer deployed a "dry stun" from the taser, but Appellant continued to resist:

> We gave [Appellant] a number of seconds to try to comply again, giving verbal commands. [Appellant] was still attempting to pull away from other officers, who were trying to control his hands. At that point, I was only able to see [Appellant's] right arm from my angle. His left arm was obscured by Officer Pascoe's body. I was unable to tell if [Appellant's] left arm had become free, and had gone under [Appellant's] own body, and was unsure if he had any type of concealed weapon on him that could have been used.

(*Id.* at 45-46).

We acknowledge Appellant's testimony that he was unable to comply with the officers' commands because he was unable to move. (*Id.* at 79). Nevertheless, the jury was free to credit the testimony of the police witnesses rather than Appellant's self-serving testimony. *See Commonwealth v. Fortson*, 165 A.3d 10, 15 (Pa.Super. 2017), *appeal denied*, 643 Pa. 663, 174 A.3d 558 (2017) (reiterating trier of fact, while passing upon credibility of witnesses, is free to believe all, part or none of evidence presented). Based upon the foregoing, the Commonwealth presented evidence to create a

reasonable inference that Appellant knew or should have known he was preventing a public servant from effecting a lawful arrest. **See** 18 Pa.C.S.A. § 5104; **Sebolka, supra**. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's resisting arrest conviction. **See id.** Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2026